# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

FILED
JAN 0 4 2008

At _____
STEPHEN R. LUDWIG
NORTHERN DISTRICT OF INDIANA

_Christopher Coulter_, )
PLAINTIFF )
*[Type or print your name on the line above]* )
)
v. )
)
_Bernard Freeman_, )
DEFENDANT )
*[Type or print only the name of the first* )
*person you are suing. List everyone you* )
*are suing on page 2.]* )

Cause No. __2:08CV7__ RL

*[Leave this blank, the clerk will supply the cause number when your case is received.]*

## PRISONER COMPLAINT
## 42 U.S.C. § 1983

### I. PARTIES

A. PLAINTIFF *[You are the plaintiff in this lawsuit. Neatly print or type your information below.]*

1. __Christopher_____Coulter_____C01307__
   Name: First      Middle      Last      Offender Number

2. Where are you being held: __Lake County Jail__
   *[name the prison or jail where you are incarcerated]*

3. What is the address: __2293 North Main Street__
   __Crown Point, Indiana 46320__

4. Did the things that you are suing about happen in the place listed above:
   ☑ YES, it happened here in the same facility I am being held at today.
   ☐ NO, it happened at _____.

5. Did the things that you are now suing about, happen:
   ☐ before you were confined, or
   ☑ when you were confined awaiting trial, or
   ☐ after conviction while confined serving a sentence.

B. DEFENDANT(S) How many defendants are you suing: 2

[The defendants are the people you are suing. Print or type the defendant's name, job title, the state or local government agency the defendant works for, and the address of that government agency. Remember to include the defendant you named in the caption on page one. If you are suing more than one defendant, <u>number</u> them.]

# Defendant's Name    Job Title/Government Agency    Work Address

1. Bernard Freeman, Warden/Lake County Jail/2293 N. Main St, Crown Point, In. 46307

2. Roy Dominguez, Sheriff/Lake County Jail/2293 N. Main St, Crown Point, In. 46307

3. City of Crown Point, Indiana

4. Lake County

## II. GRIEVANCE PROCEDURE

A. Is there a prisoner grievance system that would allow you to file a grievance about the things you are suing about?
☑ YES   ☐ NO

B. If yes, did you file a grievance about the things you are suing about?
☑ YES [Attach the response from the final step of the grievance process.]
☐ NO [Explain why you did not file a grievance.] The administration has consistantly refused to answer any of the grievances filed against them on the issue of MRSA, or inmates catching Staph disease, because of the many lawsuits filed by the inmates. My grievance was never answered.

## III. CAUSE(S) OF ACTION WITH SUPPORTING FACTS

Write why you are suing each defendant. Write who, what, when, where, and how you believe your rights were violated. It is **VERY IMPORTANT** that you use each defendant's name in describing what happened to you. If you do not write what each defendant did, the court will not know why you are suing and that defendant will be dismissed.

Explain what constitutional or federal law right, privilege or immunity each defendant violated. Do not cite or quote cases or statutes. If you want to make legal arguments or citations, you must file a separate memorandum of law. Do not attach it to this complaint.

Write a new paragraph for each violation. Name each defendant involved in that violation. **Number your paragraphs.**

1. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## The Plaintiff's Statements

I arrived at Lake County Jail on November 9, 2007, and upon my arrival I was placed in the Holding Cell #H-7. While being held in #H-7 I was not allowed to shower, and was housed with approximately 40 other inmates who could be housed in this cell for up to 14 days without showers, or no access to any soap or personal hygiene items. Inmates are only provided one blanket, with no mattresses to sleep on. It was under these overcrowded conditions, as inmates formed a human carpet of bodies all over the small cell which barely had enough space for 40 men to lay on the floors. This close contact of inmates lead to me contracting MRSA, a disease that is scientificly proven to be deadly, if left untreated. At some point while housed under these conditions in #H-7, I was exposed to this potentially deadly disease. On approximately November 12th, 2007 I noticed a boil under my arm pit, and the wound had become increacingly painful and unbareable. So I notified officer Zubrick about my wound, even showing her the boil. Zubrick then took me out of #H-7, and took me to the EMT, Sue Wolfe in the medical department. Wolfe examined my wound and told me that it was ready to be popped, but advised me to wait a few days. I was given pain medication, and transfered to another housing unit, where I remained for four days.

On approximately November 16th 2007 I was again transfered to pod #ZC-634. However, I did not recieved proper medication for the treatment on MRSA until November 17th, 2007 some five days after it was learned that I had the disease. I also never recieved proper treatment of my wound. On approximately November 18th, 2007 I had to ask another inmate to help me to pop the boil. I was in extreme pain, and was not recieving any form of medical attention. Therefore, I was force to recieve treatment from another inmate, who also was being treated for MRSA himself, and had to pop his own boils and wounds. I recieved medication for MRSA from November 17th thru 25th, 2007. I recieved no other follow-up treatment, and I never was provided bandages for the treatment of my leaking wounds. The administration placed me in harms way of a potentially deadly disease, that According to the Centers of Disease Control and Prevention, MRSA is responsible for more deaths in USA than AIDS. The medical department was negligent in its handling of my medical treatment. They must be held accountable and responsible.

The additional statements and exhibits provided offers scientific evidence from the leading authorities on MRSA and how it is spread, what causes these conditions in jails and prisons... And much more.

### Amended Statement Of Claim (scientific evidence)

Since I've been incarcerated at **Lake County Jail**, I was placed in an environment that placed me at an increased risk of a potentially deadly disease known as Methicillin-Resistant Staphylococcus Aureus **(MRSA)**, and I caught this disease.

Since I arrived here on ~~████~~ 2007 I've been consistantly placed in harms way, involuntarily exposed to **MRSA**. I have been housed in pod **ZC #534**, and there have been numerous inmates who has become infected with this disease within this pod. Some were even left in the pod and not taken to medical isolation, but left in the same cell with un-infected inmates. I am a ~~████~~ state inmate housed in **Lake County Jail** waiting for hearing and deciding of a case in a court of law under the ~~state~~ law system and my civil rights and constitutional rights have been violated by this administration by placing my life in danger due to their negligence and inadequate policies and practices with providing preventive measures to control an outbreak of **Staph skin disease** in the **Lake County Jail** facility. I have been exposed to several inmates who have been diagnose with **MRSA** some treated by the medical staff and some untreated.

The following listed inmates had **MRSA** wounds in **ZC** pod... Thormonn Lawrence (untreated), Detrick Houston (untreated), Charles Olston (treated), Willie James Gilder

(untreated). I have had close community association with all of the following inmates listed. Group Bible study and recreational activities such as basketball and work-out partners. Also the use of hair clippers, nail clippers. ████████ ████████ ████████, ██ ████████

This substandard confinement in a non-federal facility is harsh and threating to my health. And my future return to my family is threaten by the circumstances in LCJ, I do not want to take this deadly disease into the confinements of my home due to the fact that my Girl suffers from a low immune tolerance due to several health conditions that contributes to her illness.

The administration, Warden B. Freeman, Deputy Warden C. Ponton, Assoc. Warden J. Zenone, and Sheriff R. Dominguez are responsible for the threat against my life.

The jail conditions are directly linked to the wide spread of this disease. The restricted access to showers, as they are only open for one hour between 6:30 - 7:30 am in the morning when most inmates are sleeping. Showers are closed during the 10 hours that the dayroom is open. No inmates are allowed to shower during dayroom hours. As a result of this misguided policy and practice most inmates never used the showers and personal hygiene was not a priority

at LCJ. The administration discouraged personal hygiene of inmates, this is evident in their policy and practices. Only one (1) very small, single use bar of soap is provided to inmates (see Exhibit #A·1) This is all the indigent inmates are given each week, enough soap to take only one shower a week. This coupled with the lack of access to showers, has created a practice of hindering inmates ability to up keep their personal hygiene.

There are no sinks or soap available to the inmates, during dayroom hours, as the cells are kept locked. Inmates have no access to keeping themselves clean or to washing their hands for the 10 hours they are locked out of their cells. These conditions add to the conditions and can be linked to the spread of MRSA infection throughout the jail.

There are no restroom facilities available to the inmates, for the 10 hours we are locked out of their cells and kept in the dayroom. This flawed practice has turned the shower stalls into toilets, as 32 inmates would use or urinate in them all day long. The stalls would reek with the strong smell of urine, smelling like an outhouse. The administration is aware that the showers are being used as toilets, and they permit it.

Department policy locks inmates out of their cells during times when the dayroom is open. During this 10 hours of dayroom time inmates have no access

to showers, toilets, sinks or water fountain.

Inadequate personal hygiene is a factor contributed to the transmission of the MRSA infection. Limited access to sinks and showers, and to soap for hand washing and general bathing, are also contributed to the outbreak of MRSA in LCJ. The administration does absolutely nothing to educate inmates on presonal hygiene, or any preventive measures on this disease. Unlike any other jail, the administration goes to great length to hinder inmates access to showers and appropriate personal hygiene for inmates. They have in place no implemented comprehensive set of treatment and prevention guidelines for MRSA skin infections. None of the following is done to ensure our protection and safety... They do not conduct surveillance of inmates to check for possible skin infections, they don't educate inmates about MRSA or how to protect themselves from the disease, they don't provide inmates with proper wound care, they do not offer standardized antimicrobial therapy based on drug susceptibility data (including directly observed therapy), they do not provide early treatment of skin disease nor do they eradicate MRSA from asymptomatic carriers who have recurrent MRSA infections.

(see Exhibit #A-2, "MRSA Infections in Correctional Facilities")

In this report completed by the **CDC** it investigates the causes of the spread of this disease.

**First**, investigators indentified barriers to routine inmate hygiene. Access to soap was often limited. Mental health and behavior problems among inmates might have contributed to poor adherence and hindered efforts to improve hygiene. Inmates clothes was washed by hand or in bulk loads, and potentially contaminated laundry might not have undergone sufficiently high water temperatures or drying to eliminate bacteria.

**Second**, proper access to medical care was hindered by co-payments required for acute care visits and by inadequate supplies and staff for wound care.

**Third**, frequent medical staff turnover was a challenge to providing education on proper infections control procedures.

**Finally**, MRSA might have been an unrecognized cause of skin infections among inmates; wounds often were attributed to spider bites, and cultures might have been collected infrequently even in cases in which antimicrobial treatment failed.

This report links the conditions in the jail and the administration flawed policy and practices as contributing factors in the spread of MRSA thoughout **LCJ** among inmates.

The administration needs a strategy to improve hygiene and infection-control practices in

correctional facilities like **LCJ**, will likely be the most effective approach for long-term success. Such strategy should include #1. skin infection screening and monitoring (e.g., maintaining a long of skin infections and visual skin screening on intake), #2. culturing suspect lesions and providing targeted antimicrobial therapy, #3. efforts to improve inmate hygiene (e.g., education about appropriate hand and body hygiene, appropriate laundering techniques, measures to limit use of shared items, and greater availability of soap), #4. improved access to wound care and trained health care staff.

What is extremely lacking at **LCJ** is "**environmental cleaning**," and this has been linked to the spread of this disease in the jail. The administration has no requirements placed on the inmates to clean and/or keep clean the dayrooms or the cells. In fact the administration actually discourages cleaning by only allowing inmates to clean their cells once a week, and not even every week. Also cleaning supplies are only provided once a week, and not every week. Showers can only be cleaned once a week.

Surfaces of the dayroom tables are never effectively cleaned due to their not being any cleaning solutions provided to the inmates. Tables are merely wiped off with dirty rags adding to the contamination on the tables and seats. The railings to the stairs are also filthy and is also a surface used to spread **MRSA**.

Staphylococcus aureus is an important and common pathogen in humans. It is found in the nose or on the skin of many healthy, asymptomatic persons (i.e., carriers) and can cause infections with clinical manifestations ranging from pustules to sepsis and death. Most transmission occurs through the contaminated hands of a person infected with or carrying **S. aureus**.

The administration makes no effort to allow inmates to clean their hands, during the **10** hours of dayroom time allowed to inmates we have no ability to keep our hands clean. This policy and practice adds to the spread of this deadly disease. Disease transmission can occur easily among inmates at correctional facilities. In 2007 approximately two million persons were incarcerated in the United States. Skin or soft tissue infections are recognized problems in these facilities. MRSA disease in prisons can be controlled or prevented using several approaches.

First, severe skin disease or treatment failures of presumed **S. aureus** skin infections should be evaluated with appropriate cultures or other diagnostic tests. Efforts to monitor the etiology of skin disease should be linked to these data to determine whether MRSA is a problem in the facility. MRSA outbreaks can be reported to CDC (telephone 800-893-0485) through state departments of corrections and state health departments.

**Second**, optimal treatment of **MRSA** disease should be based on the infecting organisms antimicrobial susceptibility result and, when available, input by infections disease expertise.

**Third**, close contact among inmates may place them at increased risk of transmission of skin-colonizing or skin-infecting organisms. To prevent skin disease, all inmates should practice good personal hygiene, including daily showers. Inmates should avoid touching wounds or draining of others and should have access to sinks and plain soap (in this setting, the usefulness of antibacterial soap is unknown). Hands should be washed with soap as soon as possible after touching wounds or dressings. Personnel that provide wound care should follow Standard Precautions.

(see Exhibit #A-3, "**MRSA** Skin or Soft Tissue Infections in a State Prison ——— Mississippi, 2000")

Nearly nothing in the reports prepared by the Centers for Disease Control and Prevention, are being done to prevent exposure to inmates at **LCJ**. The administration has been reckless with the health and safety of inmates, placing them in harms way of a deadly disease.

Jail conditions and the flawed policy and practices, are the cause of inmates being infected with **MRSA**, and all inmates are in serious danger of catching this deadly disease within the jail.

LCJ is overcrowded and these conditions lead to the wide spread of this disease. Upon ones arrival into the jail, we are placed in a holding cell and kept in this cell for up to seven days straight. Cell #H-7 houses all inmates arrested with felony charges, at anytime there might be up to 40 inmates in this small holding cell. Inmates are only provided one blanket, and no matress or mat to sleep on. This room has inmates sleeping all over the floor, every space on the floor is filled with bodies as inmates form a human carpet around the whole room. No showers are offered to the inmates who are housed here for up to 7 days awaiting beds to open on the pods. This holding is and remains completely filthy and dirty, and is a health hazard as inmates are placed in close contact with other inmates who may have MRSA. There are no screening of inmates prior to the placement in this cell, or prior to being sent to general population. The administration has created these conditions, and are responsible for the spread of this disease.

Inmates are only provided one uniform and because most can not afford to buy underwear, and are not provided underwear by the jail. So they must wear the same uniform 7 days a week, and 24 hours a day a total of 168 hours in a week are spent in the same uniform.

Uniforms are only washed once a week, on Wednesdays, and both infected inmates with MRSA, and other inmates clothes are washed together. So are the whites "underwear" washed with infected inmates who are still in the pod while

their wounds are draining, leaking into others clothes.

**Blankets** are hardly ever exchanged, most inmates kept the same blanket for 4 to 6 months without changing. The jail officials do not allow inmates to wash them, and infected inmates keep the same blankets from before, during and after their infection with **MRSA**. This practice leads to the re-occurance of the disease among inmates.

Inmates are required to do their own self-draining of boils and/or skin laceration, by the **LCJ** medical health care providers. Bandages are often left behind in the showers to infect others.

The study identified previous skin infections and recent close contact with an **MRSA** infected inmate as risk factors for infection. (See Exhibit #A-2).

**Warden Bernard "Binnie" Freeman** has been the captain of this ship, and was at the helm when this ship ran a ground. These conditions and flawed policy was implemented under his leadership. Therefore, he must be held accountable for the injustices and for placing my life at risk of this potentually deadly disease. Freeman has shown no regard for my health and safety and so I have come to the court to seek justice.

**Sheriff Roy Dominguez** is equally at fault as he too is well aware of the conditions in the jail, he knows how filthy and nasty the pods and cells are being kept. He also knows that his

administration are to blame for the wide spread of MRSA throughout the Lake County Jail. Under his leadership inmates have been involuntaryly exposed to a deadly disease that could kill them.

(See Exhibit #A-04, ████████)

Eighteen (18) inmates housed in pod #ZC have each signed my affidavit verifying the conditions inside the pod that we are all forced to live in.

I firmly believe that my life is in danger from these conditions, that many other inmates have become a victim in.

## Centers For Disease Control & Prevention

- Emerging Infections Diseases

"Personal Hygiene and Methicillin-resistant Staphylococcus aureus Infection"

Methicillin-resistant Staphylococcus aureus (MRSA) infections outside the healthcare setting are an increasing concern. We conducted a case-control study to investigate an MRSA outbreak during 2002-2003 in a Missouri prison and focused on hygiene factors. Information on sociodemographic characteristics, medical history, and hygiene practices of study participants was collected by interview and medical record review. Logistic regression was used to evaluate MRSA infection

in relation to hygiene factors individually and as a composite hygiene score; potential confounding factors were controlled. Selected **MRSA** isolates were analyzed by pulsed-field gel electrophoresis (**PFGE**). **MRSA** infection was significantly associated with a low composite hygiene score. Transmission among prison inmates appeared to be responsible for this outbreak. PFGE analysis showed that isolates were indistinguishable and associated with community-onset **MRSA** infections in other US prisons. Improving hygiene practices and environmental conditions may help prevent and interrupt future **MRSA** outbreaks in prison settings.

- Materials and Methods
  Case-Control Study (See the report)

- Laboratory Investigation (see the report)

- Results (see the report)

- Discussion

In this case-control study of a MRSA outbreak in a prison setting, poor personal hygiene practices were significantly associated with an increase risk for MRSA infection after controlling for sociodemographic and other risk factors. This outbreak was likely caused by transmission inside the prison because 90% of the case-patients had culture confirmation at least 90 days after prison admission, and subtyping by PFGE showed

that 6 of the 7 isolates tested had identical PFGE patterns and 1 differed by only 1 band. These isolates belonged to pulsed-field type USA 300 lineage, which is associated with community-onset MRSA infections in other correctional facilities and community outbreak (11).

Based on literature review, outbreaks of MRSA infection are thought to be caused by the complex interaction of the environment contaminated by MRSA, indiscriminate use of antimicrobial drugs, and personal hygiene factors (12,13). In a crowded, institutionalized setting such as a prison, the interplay of such factors is more pronounced. As a result, many outbreaks have occurred in such settings (1,14). Hospital environmental surfaces, healthcare workers gowns, and patient-care items contaminated by patients infected or colonized with MRSA have been shown to pose significant risks for MRSA transmission (12,15). Boyce et al. (16) found that 73% of hospital rooms containing patients infected with MRSA and 69% of rooms containing patients colonized with MRSA had environmental contamination. Research also showed that the nurses gloves became contaminated 42% of the time after they touched surfaces contaminated with the bacteria. Potential transmission of MRSA infection through contaminated surfaces and shared items was identified in a rural community by Baggett et al. (17). In a community based study, Calfee et al. (18) demonstrated that close contact with a person colonized or infected with MRSA resulted in

a 7.5-fold greater risk of becoming colonized with MRSA. Persons colonized with MRSA also have an increased risk for MRSA infection (19.20). Based on the results of these studies and observations in this study, one can conclude that a prison environment can be easily contaminated by MRSA. Improved personal hygiene may provide protection for inmates living and working in such contaminated environments. In this outbreak, a complex set of factors likely contributed to the spread of infection. These factors include improper care of infected skin lesions by inmates, poor personal hygiene by inmates, and close contact in confined space. The findings of this study underscore the importance of the targeted education efforts to control MRSA outbreaks. Education about MRSA infection, especially the importance of proper personal hygiene, should be an integral part of efforts to eliminate and prevent MRSA infections and outbreaks. Such measures may be important in reducing the spread of MRSA in prison settings, where inherent rules and regulations complicate the implementation of certain control measures.

(see Exhibit #A-07, Emerging Infectious Diseases)

(see Exhibit #A-07, Medication taken for MRSA, while at L.C.J.)